No. 24-1786

# In the
# United States Court of Appeals
# For the
# Eighth Circuit

---

Diana Delgado,

                    Plaintiff-Appellant,

vs.

Midland Credit Management, Inc.

                    Defendant-Appellee.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA,
NO. 23-CV-02128-ECT-JFD

---

## ADDENDUM

Darren Brayer Schwiebert
DEBT LAWSUIT RELIEF, INC.
301 Fourth Avenue South
Suite 280N
Minneapolis, MN 55415
(612) 501-6008

John M. Buhta
SOUTHERN MINNESOTA REGIONAL
LEGAL SERVICES, INC.
903 West Center Street, Ste 230
Rochester, MN 55902
(507) 292-0080

ADDEMDUM TO OPENING BRIEF OF APPELLANT

Table of Contents

3/25/2024 Opinion and Order [Dckt. No. 36]..................................1-37

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Diana Delgado,

        Plaintiff,

v.

Midland Credit Management, Inc.,

        Defendant.

File No. 23-cv-2128 (ECT/JFD)

**OPINION AND ORDER**

---

Darren B. Schwiebert, Briol & Benson, PLLC, Minneapolis, MN, and John Michael Buhta, Southern Minnesota Regional Legal Services, Inc., Rochester, MN, for Plaintiff Diana Delgado.

Kiralyn Locke and Patrick D. Newman, Bassford Remele, Minneapolis, MN, for Defendant Midland Credit Management, Inc.

---

Plaintiff Diana Delgado brings several claims under the Fair Debt Collection Practices Act ("FDCPA") against Defendant Midland Credit Management, Inc. In Minnesota state district court, Midland sought, and received, default judgment against Delgado in the amount of $1,350.56. Now Delgado alleges that Midland's state-court summons, notice of intent to enter default mailed to Delgado, and declaration of no answer filed in state court violated § 1692f(1), § 1692e(10), and § 1692e(10) of the FDCPA because the documents were inaccurate or misleading in some respect. She also claims the state-court lawsuit and Midland's related collection efforts violated § 1692f(1) of the FDCPA because Midland did not own the debt. Midland moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(c).

Midland's motion will be granted.  The summons-related and notice-related FDCPA claims will be dismissed for lack of Article III standing because Delgado was not concretely injured by the challenged conduct.  Delgado's claim that Midland attempted to collect a debt it didn't own in violation of § 1692f(1) will be dismissed because the claim is collaterally estopped by the state-court judgment.  And Delgado's declaration-related FDCPA claims will be dismissed for failure to state a claim because the state-court summons was not fatally defective.

I[1]

On September 1, 2022, "Midland served what purported to be a Summons and Complaint" on Delgado.  Compl. [ECF No. 1] ¶ 20.  In relevant part, the summons reads as follows:

> **YOU ARE BEING SUED.**  Plaintiff has started a lawsuit against you.  Plaintiff's Complaint against you is attached to this Summons.  Do not throw these papers away.  They are official papers that affect your rights.  You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no Court file number on this Summons.

---

[1]     In analyzing a facial challenge to subject-matter jurisdiction under Rule 12(b)(1) or a Rule 12(c) motion for judgment on the pleadings, all factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff.  *See Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990).  Accordingly, the relevant facts are drawn from Delgado's Complaint and are accepted as true.  In resolving such motions, courts ordinarily do not consider matters outside the pleadings.  *See* Fed. R. Civ. P. 12(d); *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017).  Courts may, however, "additionally consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned."  *Zean*, 858 F.3d at 526 (internal quotation marks and citations omitted).  The state-court summons, complaint, declaration, and notice are incorporated by reference in Delgado's Complaint, are integral to her claim, and are matters of public record filed in state court.  Therefore, those filings will be considered.

**YOU MUST REPLY WITHIN 21 DAYS TO PROTECT YOUR RIGHTS.**  You must give or mail to the person who signed this Summons a **written response** called an Answer within 21 days of the date on which you received this Summons.  You must send a copy of your Answer to the person who signed this Summons located at Messerli & Kramer P.A., 3033 Campus Drive, Suite 250, Plymouth, MN 55441.

. . . .

**YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.**  If you do not Answer within 21 days, you will lose this case.  You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint.  If you do not want to contest the claims stated in the Complaint, you do not need to respond.  A Default Judgment can then be entered against you for the relief requested in the Complaint.

ECF No. 16 at 12.[2]  In Midland's state-court complaint, it alleged (1) the original creditor, Synchrony Bank, issued a credit account number to Delgado; (2) Delgado "made purchases and/or received cash advances on the account"; (3) the last payment made on the account was received on May 21, 2019; (4) the balance of the account was $790.56; (5) Midland purchased the account on November 25, 2020; and (6) Midland owns the account as successor in interest to Synchrony Bank.  *Id.* at 14–15.

On November 3, 2022, "Midland filed the Summons and Complaint in Olmsted County District Court, along with a Declaration of No Answer, Identification, Non-Military Status, Amount Due and Costs and Disbursements . . ., a Notice of Intent to Apply

---

[2]    Page citations are to a document's CM/ECF pagination appearing in the upper right corner, not to a document's original pagination.

for Default Judgment . . ., and a Proposed Order." Compl. ¶ 21. The notice of intent is dated September 26, 2022, ECF No. 16 at 20, but the Complaint in this case does not allege whether Delgado received the notice. *See generally* Compl. In the notice, Midland represented that "[it] will ask the Court to enter a judgment against you without any further court proceedings, unless you mail a written Answer or written response contesting the debt within 14 days from the date below." *Id.* ¶ 34. In its declaration of no answer, Midland stated Delgado had been duly served and was in default. ECF No. 16 at 17; Compl. ¶¶ 27–28. The declaration further stated, "there is now due by [Delgado] to [Midland] on the debt set forth the amount of $790.56." Compl. ¶ 30. Midland also requested costs and disbursements in the amount of $560. *Id.* ¶ 31.

The state court entered default judgment against Delgado in the claimed amount of $1,350.56. Compl. ¶ 43. The judgment resulted in "harm to [Delgado's] credit rating." *Id.* ¶ 63. Since the state court entered default judgment against Delgado, Midland has been attempting to collect on the judgment. *Id.* ¶ 44.

On July 13, 2023, Delgado filed the Complaint. Delgado alleges several distinct claims under § 1692f(1), § 1692e(5), and § 1692e(10) of the FDCPA. Compl. ¶¶ 45–58. Delgado claims: (1) Midland violated § 1692f(1) by bringing the state-court suit and subsequently attempting to collect Delgado's debt despite not owning the debt, *id.* ¶¶ 38–42, 56; (2) Midland's summons violated § 1692f(1), § 1692e(5), and § 1692e(10), *id.* ¶¶ 25–26, 49; (3) Midland's notice of intent violated § 1692f(1), § 1692e(5), and § 1692e(10), *id.* ¶¶ 49–50; and (4) Midland's declaration violated § 1692e(5) and

§ 1692e(10), *id.* ¶ 47.   Midland now moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(c).

## II

Both the jurisdictional and merits aspects of Midland's motions are evaluated under the Rule 12(b)(6) standard.   Midland relies only on the Complaint and materials in the public record, meaning it brings a "facial" challenge to subject-matter jurisdiction. *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015).   In analyzing a facial challenge, a court "restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (citations omitted).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A Rule 12(c) motion for judgment on the pleadings is assessed under the same standard as a Rule 12(b)(6) motion. *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).   Under the familiar Rule 12(b)(6) standard, a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).   The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.   "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III

### A

#### 1

Although the parties did not brief Article III standing, it is necessary to start there. The United States Constitution limits the subject-matter jurisdiction of federal courts to ongoing cases and controversies. *See* U.S. Const. art. III, § 2, cl. 1. Article III standing "is a jurisdictional prerequisite and thus a threshold issue that [a court is] obligated to scrutinize, sua sponte if need be." *Bernbeck v. Gale*, 829 F.3d 643, 646 (8th Cir. 2016) (internal quotation marks and citation omitted). "To show Article III standing, a plaintiff has the burden of proving: (1) that he or she suffered an 'injury-in-fact,' (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision." *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). A plaintiff must demonstrate standing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. "And standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

To establish an injury in fact, a plaintiff must show "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent." *Lujan*, 504 U.S. at 560. The Supreme Court has explained in some detail what makes an injury

"concrete" for Article III's purposes.  *See, e.g.*, *Ramirez*, 594 U.S. at 424–30.  A "concrete" injury is "real, and not abstract."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (cleaned up).  Complaints that allege "economic or physical harms" are almost always no-doubters. *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 642 (2007) (Souter, J., dissenting).  This is true even if the alleged harm is "only a few pennies."  *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1029 (8th Cir. 2014).  "Various intangible harms can also be concrete," though they also may present more difficult and closer calls.  *Ramirez*, 594 U.S. at 425.  As the Court explained in *Spokeo* in the context of federal statutory claims:

> In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles.  Because the doctrine of standing derives from the case-or-controversy requirement, and because that requirement in turn is grounded in historical practice, it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.  In addition, because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important.  Thus, we said in *Lujan* that Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." Similarly, Justice Kennedy's concurrence in that case explained that "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before."

578 U.S. at 340–41 (citations omitted).  Examples of "harms traditionally recognized as providing a basis for lawsuits in American courts . . . include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion."  *Ramirez*, 594 U.S.

7

at 425.  In the context of an alleged federal statutory violation, the task, as I understand it, is to examine the plaintiff's injury allegations and determine whether they have a "close relationship" to a harm traditionally recognized as the basis for a case under the common law.  *Spokeo*, 578 U.S. at 341; *see also Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925, 930–31 (8th Cir. 2016).[3]

2

a

Start with Delgado's claim that Midland violated § 1692f(1) by attempting to collect the $790.56 debt despite not owning the debt.  Delgado plausibly alleges both tangible and intangible harms fairly traceable to Midland's attempts to collect the debt.  Midland's state-court debt-collection efforts resulted in a money judgment with a related harm to Delgado's credit rating.  Compl. ¶ 63.  "Several courts have found that diminution of credit score confers standing as a financial harm that impacts a consumer's economic condition."  *Norman v. Trans Union, LLC*, 669 F. Supp. 3d 351, 371 (E.D. Pa. 2023) (collecting cases).

---

[3]      Some post-*Spokeo* but pre-*Ramirez* cases hold that any violation of § 1692e or § 1692f is a concrete injury.  *See, e.g.*, *Gause v. Med. Bus. Consultants, Inc.*, 424 F. Supp. 3d 1175, 1198 (M.D. Fla. 2019) ("An overwhelming majority of courts have determined sections 1692e and 1692f of the FDCPA provide substantive rights to consumers that necessarily protect their Congressionally recognized, concrete interests in being free from abusive debt collection practices, and that violations of the statutes' provisions therefore give rise to concrete injuries sufficient to confer Article III standing.").  But *Ramirez* clarified that "plaintiffs must show that the statutory violation caused them a concrete harm, regardless of whether the statutory rights violated were substantive or procedural."  *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 64 n.2 (2d Cir. 2021); *see also Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 823 (5th Cir. 2022) (rejecting the distinction between substantive and procedural statutory rights).  In other words, a violation of the FDCPA, without more, is not enough for a plaintiff to have Article III standing.

8

The judgment and diminution of credit score are particularized to Delgado and were caused by Midland's debt-collection efforts.

To decide whether Delgado's intangible injury allegations are sufficient, *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685 (8th Cir. 2017), is instructive. In *Demarais*, a debt collector dismissed its case against a consumer with prejudice, but later sent a letter attempting to collect the same debt, serving the consumer with interrogatories and stating that the consumer was required to respond within 30 days. *Id.* at 690. The Eighth Circuit found the consumer had standing to sue under the FDCPA because the debt collector's attempt to collect the dismissed debt bore a close relationship with unjustifiable-litigation torts. *Id.* at 691–92. As the Eighth Circuit explained, "[w]ith § 1692f(1), Congress identified a harm—being subjected to attempts to collect debts not owed." *Id.* at 691. That harm "is similar to the harm suffered by victims of the common-law torts of malicious prosecution, wrongful use of civil proceedings, and abuse of process." *Id.* "In light of the similarities between [the consumer's] alleged harm and traditionally recognized harms, and Congress's judgment that attempts to collect debts not owed cause real injuries," the Eighth Circuit found that the debt collector's attempt to collect the dismissed debt caused the consumer a concrete injury in fact. *Id.* at 692.

Some language in *Demarais* could be construed broadly. For example, "[the debt collector's] alleged invasion of [the consumer's] § 1692f(1) rights is a concrete injury in fact," *id.* at 693, could be read to mean that any violation of § 1692f(1) is a concrete injury because violations of the statute create real risks of harm. However, *Ramirez* cautions against such a wholesale approach. *See Ramirez*, 594 U.S. at 426–27. And since *Ramirez*,

the Eighth Circuit has framed *Demarais* more narrowly, explaining that in *Demarais* "the debtor's FDCPA claims, including claims of mental distress, . . . bore a close relationship to 'common-law unjustifiable-litigation torts.'" *Ojogwu v. Rodenburg L. Firm*, 26 F.4th 457, 463 (8th Cir. 2022) (quoting *Demarais*, 869 F.3d at 691–92). Therefore, I understand *Demarais* to hold that being subject to attempts to collect a debt not owed is an intangible harm sufficient to confer Article III standing when the underlying facts bear a sufficiently close relationship to a common-law unjustifiable-litigation tort.[4]

Here, Midland's suit against Delgado without owning the debt bears a close relationship to the well-recognized tort of the wrongful use of civil proceedings. *See Viernes v. DNF Assocs., LLC*, 582 F. Supp. 3d 738, 750 (D. Haw. 2022) ("There is a close relationship between being subjected to an unlawful lawsuit and the four elements of wrongful civil proceedings."). *Viernes*'s element-by-element analysis of an FDCPA claim is persuasive here. *Id.* at 749–52. Moreover, the facts alleged in this case bear a closer relationship with the tort of wrongful use of civil proceedings than what the Eighth Circuit

---

[4]     Cases have framed the intangible injury in *Demarais* differently. *Compare Thome v. Sayer L. Grp., P.C.*, 567 F. Supp. 3d 1057, 1071 (N.D. Iowa 2021) ("Accordingly, the *Demarais* Court found the plaintiff's emotional distress was a concrete injury."), *and Ojogwu*, 26 F.4th at 463 (describing *Demarais* as "including claims of mental distress"), *with Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 869 (6th Cir. 2020) (describing the harm as "being asked to pay a debt not owed"), *Hrdlicka v. Bruce*, No. 3:21-cv-00033-GFVT, 2022 WL 1497138, at *4 (E.D. Ky. May 11, 2022) (describing the harm as the attempt to collect the debt), *and Mayfield v. Portfolio Recovery Assocs., LLC*, 553 F. Supp. 3d 676, 682 (D. Minn. 2021) (same). *Demarais* did not discuss any specific allegations of emotional distress or claims of mental distress. *See generally Demarais*, 869 F.3d 685. Instead, it framed "the harm of being subjected to baseless legal claims" as the intangible harm sufficient to confer Article III standing. *Id.* at 691–92. Therefore, Delgado need not allege emotional harm (or some other intangible injury) to have been concretely injured by Midland's attempts to collect a debt not owed.

10

found sufficient in *Demarais*.   Therefore, Delgado has Article III standing to claim Midland's attempt to collect a debt it did not own violated § 1692f(1).

b

Turn next to Delgado's claim that Midland's state-court summons violated § 1692f(1), § 1692e(5), and § 1692e(10).  Delgado claims the summons was "contrary to" Minnesota Rule of Civil Procedure 5.02(a)(2), Compl. ¶¶ 25–26, falsely threatened that Midland would obtain default judgment, *id.* ¶ 46, and misrepresented how Delgado was required to respond, *id.*  According to Delgado, all three claims rest on Midland misleading her "about her rights under Minnesota law by making misrepresentations in a summons that she was required to mail a written answer."  Pl.'s Mem. in Opp'n [ECF No. 29] at 2.[5]  Because the challenged conduct is closely related, it makes sense to analyze Delgado's standing to bring all three claims together.

Although fairly debatable, the better answer is that Delgado lacks Article III standing to bring her summons-related FDCPA claims.  Delgado does not allege any tangible harms fairly traceable to the challenged conduct.  Although the judgment and subsequent hit to her credit score are concrete injuries, those tangible harms are not fairly traceable to the alleged violation of Rule 5.02(a)(2), threat of default judgment, or

---

[5]     Delgado's § 1692e(5) claim also rests upon a subsequent statement: "YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE[.]"  Compl. ¶ 24.

11

representation that Delgado must send a response.  Thus, the only possible injuries are intangible.

Delgado alleges "an informational injury [because the summons] misled her with regard to the rules governing her response to the claim against her." Compl. ¶ 51.  Although an informational injury may be a concrete injury, *see Fed. Election Comm'n v. Akins*, 524 U.S. 11, (1998); *Pub. Citizen v. Dep't of Just.*, 491 U.S. 440 (1989), as the Supreme Court emphasized in *Ramirez*, Delgado must identify "'downstream consequences' from failing to receive the . . . information." *Ramirez*, 594 U.S. at 442 (quoting *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020)). "An 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'" *Id.* (quoting *Trichell*, 964 F.3d at 1004).  Here, Delgado's allegation that she was misled is conclusory, and therefore insufficient to demonstrate downstream, adverse effects.  Nor is there reason to infer an adverse effect without any factual allegations that Delgado read the summons, believed she had to mail her answer, and acted upon such a belief.  Delgado's alleged informational injury is not concrete.

Turning to the close relationship test, it makes sense to start with the tort of fraudulent misrepresentation because this tort usually offers the closest historical comparison to a § 1692e claim.  *See Trichell*, 964 F.3d at 998.  "[I]n the FDCPA context, it is not sufficient for a debtor's standing that Congress sought to protect all debtors from the receipt of false or misleading information from debt collectors; each plaintiff asserting a § 1692e violation must establish that 'the harm [she suffered] from a misleading statement of this kind bears a sufficiently close relationship to the harm from [fraudulent

misrepresentation].'"  *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 148 (3d Cir. 2023) (alterations in original) (quoting *Ramirez*, 594 U.S. at 433).  "Fraudulent misrepresentation recognizes harm flowing from plaintiffs' reasonable reliance on a misrepresentation." *Bassett v. Credit Bureau Servs., Inc.*, 60 F.4th 1132, 1136 (8th Cir. 2023).  Therefore, for alleged harms to bear a sufficiently close relationship with the tort of fraudulent misrepresentation, a plaintiff must allege an injury caused by reliance on a misleading representation.  *Id.*; *Trichell*, 964 F.3d at 998; *Morales v. Commonwealth Fin. Sys., Inc.*, No. 22-3388, 2023 WL 8111458, at *2 (3d Cir. Nov. 22, 2023); *Shields v. Pro. Bureau of Collections of Md., Inc.*, 55 F.4th 823, 830 (10th Cir. 2022).  Because Delgado has not alleged any reliance on Midland's representations or threat to obtain a default in the summons, *see generally*, Compl., the analogy to the tort of fraudulent misrepresentation fails.

The remaining possible analogous torts are the wrongful use of civil proceedings and abuse of process.  Unlike *Demarais*, the comparison falls short here.  The tort of wrongful use of civil proceedings has the following four elements:

> One who [(1)] takes an active part in the initiation, continuation or procurement of civil proceedings against another is subject to liability to the other for wrongful civil proceedings if [(2)] he acts without probable cause, and [(3)] primarily for a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based, and [(4)] except when they are ex parte, the proceedings have terminated in favor of the person against whom they are brought.

*Silver v. Mendel*, 894 F.2d 598, 604 n.9 (3d Cir. 1990) (quoting Restatement (Second) of Torts § 674 (1977 Mar. 2024 Update)); *see also Hernon v. Revere Copper & Brass, Inc.*,

494 F.2d 705, 706 (8th Cir. 1974) (quoting similar elements from the first Restatement of Torts). "The tort of malicious prosecution lies to compensate an individual who is maliciously hailed into court and forced to defend against a fabricated cause of action." *Pace v. Hillcrest Motor Co.*, 101 Cal. App. 3d 476, 478 (Cal. Ct. App. 1980). The majority rule "does *not* require any showing of special injury to prevail in a malicious prosecution action." 8 Stuart M. Speiser et al., *American Law of Torts* § 28:28 (Feb. 2024 Update); Restatement (Second) of Torts §§ 674, 681 (1977 Mar. 2024 Update); Dan B. Dobbs et al., *The Law of Torts* § 593 (2d ed. May 2023 Update) ("According to most counts, a majority of American courts allow the plaintiff to pursue the wrongful civil litigation claim without showing any special kind of injury."). Because a wrongful-use-of-civil-proceedings claim does not require special damages, it is fair to conclude that being subject to wrongful civil proceedings is a "harm[] traditionally recognized as providing a basis for lawsuits in American courts." *Ramirez*, 594 U.S. at 425. Therefore, a plaintiff bringing suit under the FDCPA may, as in *Demarais*, satisfy Article III by analogizing the facts of the alleged statutory violation to unjustified-litigation torts, including the tort of wrongful use of civil proceedings.

But in this case, the analogy quickly flounders. Delgado's summons-related FDCPA claims are premised on (1) a violation of the Minnesota Rules of Civil Procedure; (2) a false threat; and (3) a misrepresentation. The challenged conduct all relates to a single component of a lawsuit, not the decision to start or continue a lawsuit. The type of harm flowing from defects and misrepresentations in a summons is different than the type of harm found in a wrongful-use-of-civil-proceedings claim where damages are expected to

flow from defending and being subject to a baseless lawsuit.   And violating or misrepresenting Rule 5.02(a)(2) has nothing to do with Midland's probable cause to bring the state-court suit.   Nor do the factual allegations allow an inference that Midland's summons-related FDCPA violations were the result of an improper purpose.   Examples of improper purposes include malice, harassment, or delay.   Restatement (Second) of Torts § 676(c) (1977 Mar. 2024 Update).   Given Delgado failed to allege an improper purpose, s*ee generally* Compl., and Midland did not alter the challenged language taken from a court-form summons, it is neither alleged nor plausible that Midland's representations in the summons were the product of an improper purpose.[6]   Where, as here, the challenged conduct occurred *within* a lawsuit, the challenged conduct is unrelated to the defendant's probable cause to bring the suit, the plaintiff has not identified an improper purpose, and there remains a state-court judgment entered in favor of the defendant, the facts do not bear a close relationship to the tort of wrongful use of civil proceedings.

Abuse of process is no better an analog.   The elements of abuse of process are: "(1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding."   *Van Vleck v. Leikin, Ingber, & Winters, P.C.*, No. 22-1859, 2023 WL 3123696, at *5 (6th Cir. Apr. 27, 2023) (quoting *Jordan v. Nat'l City Bank*, No. 309428, 2014 WL 1233718, at *13 (Mich. Ct. App. Mar. 25, 2014)).   The misconduct

---

[6]      In *Viernes*, the court found the fourth element "ill-suited for analogy, considering the three purposes behind that element." 582 F. Supp. 3d at 751. But one of those purposes, preventing parallel litigation, is "grounded in the aversion to collateral attacks on judgments through civil-tort vehicles." *Id.* at 752.   That purpose remains relevant here, where there is a state-court judgment that Delgado has declined to attack.   To the extent the termination-in-favor-of element applies, it weighs against finding a close relationship.

"is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish."  Restatement (Second) of Torts § 682(a) (1977 Mar. 2024 Update).  "The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it."  Restatement (Second) of Torts § 682(b) (1977 Mar. 2024 Update).  Here, there are no allegations (or reason to infer) that Midland's summons was drafted or served with an improper ulterior purpose. *See generally*, Compl.  And because such an improper purpose is at the heart of an abuse of process claim, the comparison fails.  *Van Vleck*, 2023 WL 3123696, at *5 ("That the [court-form summons] did not disclose the Michigan Supreme Court's suspension [of the 21-day deadline to respond to the complaint] does not permit drawing an inference that [the defendant's] ulterior purpose was to obscure the suspension.  [The plaintiff's] allegation therefore falls short of resembling the common law tort of abuse of process.").  Because Delgado's summons-related FDCPA claims do not bear a sufficiently close relationship to a common-law tort, she lacks Article III standing to bring these claims.

c

Delgado also brings § 1692f(1), § 1692e(5), and § 1692e(10) claims related to Midland's notice of intent to enter a default.  She claims that the statement, "[Midland] will ask the Court to enter a judgment against you without any further court proceedings, unless you mail a written Answer or written response," is (1) "contrary to" Minnesota Statute

16

§ 548.101, Compl. ¶ 49; (2) a false threat to seek default judgment, *id.* ¶ 48; and (3) misrepresents Rule 5.02(a)(2), *id.*

Delgado's notice-related claims run into the same problem as her summons-related claims.  Delgado alleges no tangible harms fairly traceable to the alleged violation of Minnesota law, false threat, or misrepresentations in the notice.  Any informational injury is inadequately pleaded because there are no factual allegations of downstream, adverse consequences.  Delgado does not allege an injury bearing a close relationship to the tort of fraudulent misrepresentation because Delgado does not allege reliance on any aspect of the notice.  The tort of wrongful use of civil proceedings does not bear a close relationship to the facts of this case because the challenged conduct occurred within a lawsuit and is unrelated to Midland's probable cause to bring the state-court suit, Delgado has not alleged an improper purpose, and there remains a state-court judgment entered in favor of Midland.  And there is no close relationship with the tort of abuse of process because Delgado has not pleaded Midland drafted, served, or filed the notice with an improper purpose.  Nor is there reason to infer an improper purpose when Midland's notice matches the language in Minnesota Statute § 548.101's statutory template.   Without a concrete injury fairly traceable to Midland's notice-related challenged conduct, Delgado lacks Article III standing to bring her notice-related FDCPA claims.

d

Finally, Delgado brings § 1692e(5) and § 1692e(10) claims based on Midland's representations in a declaration to the state court that Delgado had been duly served and was in default.  Because Delgado suffered tangible harm from the judgment and related

17

harm to her credit score, the question is whether the state-court judgment is fairly traceable to Midland's representations. For Delgado's injury to be fairly traceable, she must "[allege] a sufficiently direct causal connection between the challenged action and the identified harm" that "cannot be overly attenuated." *AGRED Found. v. United States Army Corps of Eng'rs*, 3 F.4th 1069, 1073 (8th Cir. 2021). The injury must "not [be] the result of the independent action of some third party not before the court.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). But the actions of a third party in the chain of causation do not always break that causal chain. *Dep't of Com. v. New York*, 588 U.S. ----, 139 S. Ct. 2551, 2566 (2019). An injury may be "produced by determinative or coercive effect upon the action of someone else." *Bennett v. Spear*, 520 U.S. 154, 169 (1997). It can be enough if "third parties will likely react in predictable ways" to the challenged action. *Dep't of Com.*, 588 U.S. ----, 139 S. Ct. at 2566.

Although the state-court judge, a third party, entered the judgment, the judgment is fairly traceable to Midland's representations that Delgado was duly served. Delgado alleges that "the [state court], relying on Midland's false and misleading statements, entered default judgment against . . . Delgado on in [sic] the claimed amount of $1,350.56." Compl. ¶ 43. And this reliance is plausible because service of process is required for a court to enter default judgment. *Laymon v. Minn. Premier Props., LLC*, 903 N.W.2d 6, 19–20 (Minn. Ct. App. 2017). Therefore, the state court's default judgment was a predictable result of Midland's representations that Delgado had been duly served, and it is fair to conclude the judgment and diminution in credit score are fairly traceable to

18

Midland's representations.  Delgado thus has standing to challenge Midland's alleged misrepresentations in the declaration as violations of § 1692e(5) and § 1692e(10).

B

Midland argues all of Delgado's claims should be dismissed under the *Rooker-Feldman* doctrine.  "In the two decisions for which the doctrine is named, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), the Court established the narrow proposition that with the exception of habeas corpus proceedings, the inferior federal courts lack subject-matter jurisdiction over 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'"  *In re Athens/Alpha Gas Corp.*, 715 F.3d 230, 234 (8th Cir. 2013) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).  "This conclusion follows from 28 U.S.C. § 1257, which grants to the Supreme Court exclusive jurisdiction over appeals from state-court judgments."  *Id.*; *see also Exxon Mobil*, 544 U.S. at 283 ("Federal district courts . . . are empowered to exercise original, not appellate, jurisdiction.").  In *Exxon Mobil*, the Supreme Court noted that inferior federal courts had sometimes applied the *Rooker-Feldman* doctrine too broadly, "overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738," the Full Faith and Credit Act.  *Exxon Mobil*, 544 U.S. at 283.  To check the lower federal courts' enthusiasm for the *Rooker-Feldman* doctrine, the Supreme Court made clear that the doctrine applies only to cases filed in federal court by

the losing party in state court "complaining of an injury caused by the state-court judgment" that "call[] upon the District Court to overturn an injurious state-court judgment." *Id.* at 281, 291–92.  Importantly, the Court also explained that § 1257 does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court.  If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Id.* at 293 (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).

Some cases present straightforward *Rooker-Feldman* questions while others are more difficult.  *See Athens/Alpha*, 715 F.3d at 234 (observing that "the scope of the *Rooker-Feldman* doctrine, even as narrowly described in *Exxon Mobil*, is sometimes fuzzy on the margins"); *Dodson v. Univ. of Ark. for Med. Scis.*, 601 F.3d 750, 756 (8th Cir. 2010) (Melloy, J. concurring) ("Indirect appeals from state-court judgments have been more controversial[.]").  Examples are instructive.  Consider *Caldwell v. DeWoskin*, 831 F.3d 1005 (8th Cir. 2016).  There, the plaintiff, Caldwell, sued his ex-wife (Lavender) and her attorney (DeWoskin) in a federal district court alleging they had violated the automatic stay by continuing to seek enforcement of a judgment of dissolution against Caldwell, including contempt sanctions, in Missouri state court after Caldwell had filed for bankruptcy.  *Id.* at 1006–08.  The Missouri state court "decided the automatic stay did not prevent it from holding Caldwell in contempt, and so held."  *Id.* at 1007.  The Missouri Court of Appeals later reversed the contempt judgment on grounds other than the automatic

stay.  *Id.*   The federal district court entered summary judgment against Caldwell, determining that it lacked subject-matter jurisdiction under the *Rooker-Feldman* doctrine, *id.* at 1008, and the Eighth Circuit reversed, *id.* at 1008–09.  The Eighth Circuit explained: "Whether the doctrine applies depends on whether a federal plaintiff seeks relief from a state court judgment based on an allegedly erroneous decision by a state court—in which case the doctrine would apply—or seeks relief from the allegedly illegal act or omission of an adverse party."  *Id.* at 1008 (citing *Hageman v. Barton*, 817 F.3d 611, 615 (8th Cir. 2016)).  Caldwell sought only "compensation for injuries he allege[d] were caused by the actions DeWoskin and Lavender took to enforce the state court's [judgment] after the automatic stay was in place."  *Id.* at 1009.  The Eighth Circuit concluded that "Caldwell's claims are not barred by *Rooker-Feldman* because they challenge the actions taken by DeWoskin and Lavender 'in seeking and executing the [state contempt orders],' rather than the state court orders themselves."  *Id.* (quoting *Riehm v. Engelking*, 538 F.3d 952, 965 (8th Cir. 2008); *see also Hageman*, 817 F.3d at 614 (recognizing that the *Rooker-Feldman* doctrine "is limited in scope and does not bar jurisdiction over actions alleging independent claims arising from conduct in underlying state proceedings"); *Robins v. Ritchie*, 631 F.3d 919, 925 (8th Cir. 2011) (recognizing that *Rooker-Feldman* applies "if the federal claims can succeed only to the extent the state court wrongly decided the issues before it.").

Midland argues that Delgado's FDCPA action is inextricably intertwined with the state-court judgment because "to enter a judgment in [Delgado's] favor here would fundamentally conflict with the factual findings based on evidentiary submissions in the Collection Action."  Def.'s Mem. in Supp. [ECF No. 15] at 14.  But since *Exxon*, courts

have generally found FDCPA claims to be independent claims, not collateral attacks on the state court action. *Hageman v. Barton*, 817 F.3d 611, 616 (8th Cir. 2016); *Janson v. Katharyn B. Davis, LLC*, 806 F.3d 435, 437 (8th Cir. 2015); *Ness v. Gurstel Chargo, P.A.*, 933 F. Supp. 2d 1156, 1162 (D. Minn. 2013) ("Consequently, *Rooker–Feldman* does not bar an FDCPA claim challenging only a defendant's debt-collection practices, without challenging the validity of the state-court judgment."); *Wyles v. Excalibur I, LLC*, No. 05-cv-2798 (JRT/JJG), 2006 WL 2583200, at *2 (D. Minn. Sept. 7, 2006) ("Because an FDCPA plaintiff is not challenging the validity of the debt, but rather the collection practices of the creditor, a claim under the FDCPA is an 'independent claim' from a state court action to collect a debt, and Federal courts have jurisdiction over the case."). FDCPA claims are typically independent because an FDCPA plaintiff challenges an opposing party's debt collection practices and thus "seeks relief from the allegedly illegal act or omission of an adverse party." *Caldwell*, 831 F.3d at 1008.

That general rule applies here. Delgado's FDCPA claims attack Midland's summons, declaration, notice, and attempts to collect a debt not owned. Delgado's FDCPA claims are not a collateral attack because they challenge "the collection practices of the creditor." *Wyles*, 2006 WL 2583200, at *2. *Rooker-Feldman* does not prohibit Delgado's FDCPA claims that "seek[] statutory penalties based on [a defendant's] actions in the process of obtaining the judgment and order." *Hageman*, 817 F.3d at 616.

IV

A

Turning to the Rule 12(c) issues, Midland argues that Delgado's claims are barred by issue preclusion and claim preclusion. When applying claim preclusion, also known as res judicata, "[t]he law of the forum that rendered the first judgment controls." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (quoting *Laase v. Cnty. of Isanti*, 638 F.3d 853, 856 (8th Cir. 2011)). A later claim is barred under Minnesota law "where '(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; (4) the estopped party had a full and fair opportunity to litigate the matter.'" *St. Paul Fire & Marine Ins. Co. v. Compaq Comput. Corp.*, 539 F.3d 809, 821 (8th Cir. 2008) (quoting *Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004)). Claim preclusion does not depend on the legal theories identified in the complaint, rather, "[a] claim or cause of action is 'a group of operative facts giving rise to one or more bases for suing.'" *Hauschildt*, 686 N.W.2d at 840 (quoting *Martin ex rel. Hoff v. City of Rochester*, 642 N.W.2d 1, 9 (Minn. 2002)).

Here, Delgado's unpaid debt and Midland's purchase of that debt are the operative facts in Midland's state-court complaint. ECF No. 16 at 14–15. By contrast, the operative facts of Delgado's Complaint in this case are Midland's attempts to collect the debt in the state-court case. *See* Compl. ¶¶ 45–58. Because "the claims in this case are centered on [Midland's] conduct in the state-court action," the claims "could not have been raised in that case, and [Delgado] is free to raise them for the first time here." *Heroux v. Callidus*

23

*Portfolio Mgmt. Inc.*, No. 17-cv-5132 (DSD/HB), 2018 WL 2018069, at *3 (D. Minn. May

1, 2018).  Delgado's claim that Midland attempted to collect the debt despite not owning

the debt—in violation of § 1692f(1)—has significant factual overlap with the state-court

case.  But there are important distinctions.  Delgado's FDCPA claim requires her to prove

Midland attempted to collect the debt.  And the claims arose at different times: "[I]f the

right to assert the second claim did not arise at the same time as the right to assert the first

claim, then the claims cannot be considered the same cause of action."  *Care Inst., Inc.-*

*Roseville v. Cnty. of Ramsey*, 612 N.W.2d 443, 447 (Minn. 2000); *see also Hauschildt*, 686

N.W.2d at 841 (noting "the right to assert a claim based on the 1998 acts and omissions

arose after the right to a claim arose based on the 1992 distribution").  Midland's claim

first arose when Delgado failed to pay the debt (and it purchased the debt), while Delgado's

claim only arose when Midland attempted to collect the debt by filing the state-court

lawsuit.

A slightly different result is merited under collateral estoppel.  "Under Minnesota

law, collateral estoppel is appropriate when the following four elements are met: (1) the

issue [is] identical to one in a prior adjudication; (2) there was a final judgment on the

merits; (3) the estopped party was a party or in privity with a party to the prior adjudication;

and (4) the estopped party was given a full and fair opportunity to be heard on the

adjudicated issue."  *Ill. Farmers Ins. Co. v. Reed*, 662 N.W.2d 529, 531 (Minn. 2003)

(quotation omitted).  Regarding the first element, "[t]he issue on which collateral estoppel

is to be applied must be the same as that adjudicated in the prior action and it must have

been necessary and essential to the resulting judgment in that action."  *Hauschildt*, 686

N.W.2d at 837 (citing *Ellis v. Minneapolis Comm'n on Civil Rights*, 319 N.W.2d 702, 704 (Minn. 1982), and *Hauser v. Mealey*, 263 N.W.2d 803, 808 (Minn. 1978)).  "The party asserting collateral estoppel has the burden to establish that 'the issue was actually presented and necessarily determined in the earlier action.'"  *Mach v. Wells Concrete Prods. Co.*, 866 N.W.2d 921, 927 (Minn. 2015) (quoting *Lange v. City of Byron*, 255 N.W.2d 226, 228 (Minn. 1977)).  Issue preclusion in Minnesota is not "rigidly applied," rather, "the focus is on whether its application would work an injustice on the party against whom estoppel is urged."  *Falgren v. Bd. of Teaching*, 545 N.W.2d 901, 905 (Minn. 1996) (quoting *Johnson v. Consol. Freightways, Inc.*, 420 N.W.2d 608, 613–14 (Minn. 1988)).

Midland's ownership of the debt satisfies all four elements.  "A default judgment may operate as a final judgment on the merits for collateral-estoppel purposes."  *S. Robideau Const., Inc. v. Hiber*, No. A16-0451, 2016 WL 4497583, at *2 (Minn. Ct. App. Aug. 29, 2016) (citing *Roberts v. Flanagan*, 410 N.W.2d 884, 886–87 (Minn. Ct. App. 1987)).  And the parties here are the same as the parties in the state-court action.  Although the first element requires an identical issue to be actually litigated and necessarily determined, default judgments are nonetheless "collateral estoppel as to those issues pleaded in the complaint."  *In re Gibson*, 521 B.R. 645, 652 (Bankr. W.D. Wis. 2014) (quoting *Roberts v. Flanagan*, 410 N.W.2d 884, 886–87 (Minn. Ct. App. 1987)).  It makes no difference if a defendant failed to interpose a defense in the action.  *Id.* (citing *North Tel, Inc. v. Brandl*, 179 B.R. 620, 626 (Bankr. D. Minn. 1995)).  In the state-court complaint, Midland alleged it purchased and owned the debt.  ECF No. 16 at 13–14.  And Midland's ownership of the debt was a fact essential to granting the default judgment in

ADDENDUM 025

Midland's favor.  As for the fourth element, Delgado argues defective service of process interfered with her full and fair opportunity to be heard.  But Delgado's allegations that service was defective are conclusory.  And as will be explained when addressing the merits of Delgado's FDCPA claims, representations in the summons did not render it fatally defective.  Therefore, Delgado is collaterally estopped from bringing an FDCPA claim premised on the fact that Midland did not own the debt.

B

1

Now turn to the merits of Delgado's FDCPA claims.  Under 15 U.S.C. § 1692f, debt collectors are prohibited from:

> us[ing] unfair or unconscionable means to collect or attempt to collect any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

Under the relevant statutory provisions in § 1692e:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

26

> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e.  "A violation of the FDCPA is reviewed utilizing the unsophisticated-consumer standard."  *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317 (8th Cir. 2004).  This standard is "designed to protect consumers of below average sophistication or intelligence without having the standard tied to 'the very last rung on the sophistication ladder.'"  *Duffy v. Landberg*, 215 F.3d 871, 874 (8th Cir. 2000) (quoting *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997)).  While protecting "the uninformed or naïve consumer," the standard "also contains an objective element of reasonableness to protect debt collectors from liability for peculiar interpretations of collection letters."  *Strand*, 380 F.3d at 317–18.

2

a

Delgado's declaration-related FDCPA claims—her only remaining claims—will be dismissed because the challenged statements were not false or misleading.  Delgado alleges Midland's declaration filed in state court violated the FDCPA because it falsely represented that Delgado had been "duly served" and was "in default."  Pl.'s Mem. in Opp'n at 2.  Delgado acknowledges receiving Midland's summons, Compl. ¶ 20, but contends that the summons was fatally defective because it misrepresents Minnesota Rule of Civil Procedure 5.02(a)(2).  The summons states, "YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS," Compl. ¶ 24, but Rule 5.02(a)(2) allows defendants to hand

deliver an answer.  Because Delgado does not challenge any other aspect of service, the question is whether the contents of the summons rendered the summons defective.

A summons is defective if it fails to "give defendant the notice which the [rule] directs should be given." *Tharp v. Tharp*, 36 N.W.2d 1, 26 (Minn. 1949); *see also Tullis v. Federated Mut. Ins. Co.*, 570 N.W.2d 309, 311 (Minn. 1997) ("Service of process in a manner not authorized by the rule is ineffective service.").  Rule 4.01 governs the contents of a summons as follows:

> The summons shall state the name of the court and the names of the parties, be subscribed by the plaintiff or by the plaintiff's attorney, give an address within the United States where the subscriber may be served in person and by mail, state the time within which these rules require the defendant to serve an answer, and notify the defendant that if the defendant fails to do so judgment by default will be rendered against the defendant for the relief demanded in the complaint.

Minn. R. Civ. P. 4.01.  Because Rule 4.01 governs the contents of a summons, a summons that violates Rule 4.01 is legally defective.  *Wiley v. Portfolio Recovery Assocs., LLC*, No. 20-cv-00737 (SRN/KMM) et al., 2021 WL 780763, at *5 (D. Minn. Mar. 1, 2021). However, Minnesota law only requires substantial compliance with its service-of-process rules.  *Haas v. Brandvold*, 418 N.W.2d 511, 531 (Minn. Ct. App. 1988).  The requirements should be "given a liberal construction to avoid defeating an action on account of technical and formal defects which could not reasonably have misled or prejudiced the defendant." *Tharp*, 36 N.W.2d at 25.

Delgado has not identified any requirement in Rule 4.01 that is absent from Midland's summons.  Although a summons must include an "address where the subscriber

may be served in person and by mail," Rule 4.01 does not require summonses to detail how a recipient may send an answer.[7]  Nor is it clear that additional misleading information would render the summons defective.  *Gould v. Johnston*, 24 Minn. 188, 190 (1877) ("The summons must notify the defendant of the filing of the complaint, allow him the proper time to answer . . . .  If there be anything more in the summons by which defendant is misled, it does not affect the jurisdiction; but the defendant's relief must be got by applying to the court below.  If he is not so misled, then the redundant matter is harmless.").  Delgado cites no legal authority to support her theory that misrepresenting Rule 5.02(a)(2) would render the summons defective.  *See generally*, Pl.'s Mem. in Opp'n at 15–22.  And as will be discussed in more detail shortly, the summons does not misrepresent Rule 5.02(a)(2) because the summons explains: "You must give or mail to the person who signed this Summons a written response called an Answer."  ECF No. 16 at 12–13.  Moreover, Midland used a court-form summons.  Compl. ¶ 52.  To hold Midland's court-form summons was fatally defective would mean countless Minnesota lawsuits have been served with fatally defective summons.  That sweeping conclusion is not merited here.

Delgado counters that "the Court must accept as true [Delgado's] allegations that service was defective[.]"  Pl.'s Mem. in Opp'n at 12.  Not so.  Courts are not required to accept as true conclusory allegations, such as Delgado's allegation that "fatal defects in the Summons rendered service ineffective."  Compl. ¶ 29.  Nor is Delgado's reliance on *Wiley v. Portfolio Recovery Assocs., LLC*, 2021 WL 780763, persuasive.  *Wiley* involved a

---

[7]   By contrast, Rule 5.02(a)(2) only describes acceptable methods of service; it does not impose substantive requirements on the contents of a summons.

violation of Rule 4.01, the Minnesota Rule of Civil Procedure governing the content of a summons. *Id.* at \*5 ("Like each of the state courts to address this issue, the Court finds that the summons did not comply with Rule 4.01."). In fact, the summons in *Wiley* included the same language Delgado challenges here: "YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS." *Id.* at \*1. But absent from *Wiley* is any discussion that such language could render a summons fatally defective.

b

Although Delgado's summons-related claims will be dismissed for lack of Article III standing, they would alternatively be dismissed for failing to state a claim. Delgado claims the state-court summons violated § 1692f(1), § 1692e(5), and § 1692e(10).

A debt collector violates § 1692f(1) by "attempting to collect money not permitted by law." *Demarais*, 869 F.3d at 691. "A plaintiff who pleads a violation of § 1692f(1) based on an action not 'permitted by law' must necessarily plead that another law, not the FDCPA, was violated." *Klein v. Stewart Zlimen & Jungers, Ltd.*, No. 18-cv-658 (JRT/ECW), 2019 WL 79317, at \*4 (D. Minn. Jan. 2, 2019). Delgado's only theory is that the summons was "contrary" to Minnesota Rule of Civil Procedure 5.02(a)(2). *See* Compl. ¶¶ 25–26. But Delgado has not plausibly alleged the summons violated Rule 5.02(a)(2) because Rule 4.01, not Rule 5.02(a)(2), governs the contents of summons. Therefore, Delgado's summons-related § 1692f(1) claim fails to state a claim.

For similar reasons, Delgado's § 1692e(5) claim falls short. Her theory is that the summons was defective, making the statement "YOU WILL LOSE YOUR CASE IF YOU

30

DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS," a false threat.  Pl.'s Mem. in Opp'n at 15.  Although a defective summons can render the required default-warning a false threat, *see Wiley*, 2021 WL 780763, at *5, Midland's summons was not defective.  Because Delgado has not plausibly alleged service of process was ineffective, she fails to plausibly allege the threat to obtain default was false or misleading.  And true to its word, Midland went on to obtain the default judgment.[8]

Deciding whether the same language in the state-court summons was misleading—in violation of § 1692e(10)—requires more analysis but ends at the same result.  Delgado contends the statement "YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS," ECF No. 16 at 12, is misleading because Delgado could hand deliver an answer.  But that statement must be read in context.  The second paragraph of the summons reads:

> **YOU MUST REPLY WITHIN 21 DAYS TO PROTECT YOUR RIGHTS.**  You must give or mail to the person who signed this Summons a **written response** called an Answer within 21 days of the date on which you received this Summons.  You must send a copy of your Answer to the person who signed this Summons located at Messerli & Kramer P.A., 3033 Campus Drive, Suite 250, Plymouth, MN 55441.

---

[8]   Delgado's theory might also be that the threat of default was false because Delgado could hand deliver an answer.  *See* Compl. ¶ 46.  To the extent this is the case, her claim is based on the same misrepresentation as her § 1692e(10) claim, and therefore her § 1692e(5) claim would fail to state a claim for the same reason her § 1692e(10) claim fails.

ECF No. 16 at 12.  The first sentence instructs the defendant to "give or mail" a response. *Id.*  The second sentence replaces give or mail with send.  *Id.*  Given this is the first paragraph describing how the defendant must respond to the summons, and "give or mail" precedes "send," Delgado's interpretation that the summons "required [her] to **mail** a written answer to the complaint," Pl.'s Mem. in Opp'n at 15, is peculiar.  Send, defined as "to cause to be conveyed to a destination," *Send*, The American Heritage Dictionary 750 (5th Ed. 2012), is broader than mail, and at least includes the most common forms of personal service under Rule 5.02(a)(2).  The unsophisticated consumer standard "contains an objective element of reasonableness" to protect debt collectors from interpretations such as Delgado's in this case.  *Strand*, 380 F.3d at 317–18   When read in context, an unsophisticated consumer would not believe they are required to mail a response or unable to hand deliver a response.[9]

Moreover, courts have expressed skepticism of FDCPA claims based on misrepresentations in court forms.[10]  *Lauber v. Lawrence & Morris*, No. 16 C 11050, 2017 WL 4164029, at *4 (N.D. Ill. Sept. 20, 2017) ("[B]oth McHenry and St. Clair County

---

[9]   Although the standard is objective, it is worth noting Delgado does not allege she was misled by the summons.

[10]   Identical language is recommended by a Minnesota Judicial Branch form and the Minnesota Practice Series.  *Minnesota Rules of Civil Procedure Appendices and Forms*, Minnesota Judicial Branch, https://www.mncourts.gov/SupremeCourt/Court-Rules/Rules-of-Civil-Procedure-Appendices-and-Forms.aspx (last visited March 24, 2024); 15 Allan Zlimen, *Minnesota Practice Series Collections Handbook* Form 17:8 (3d ed. Sep. 2023 Update); Roger S. Haydock, David F. Herr, and Sonja D. Peterson, *Minnesota Practice Series Civil Practice Forms* § 4:2 (3d ed. June 2023 Update); David F. Herr & Roger S. Haydock, *Minnesota Practice Series Civil Rules Annotated* Rule 84 (6th ed. May 2023 Update).

courts use the language used by Defendants in the citation, meaning that finding this caption to violate § 1692e would also cause all citations from these two counties to violate § 1692e.  Considering that this language has been sanctioned by two other county court systems and that the language does not substantially differ from that provided by state statute, clearly not even a significant fraction of the population would be misled by the language Lauber complains of in the caption here." (quotation marks omitted)); *Yan Lin v. Portfolio Recovery Assocs., LLC*, No. 19-CV-2910, 2020 WL 1939186, at *5 (N.D. Ill. Apr. 22, 2020); *Scioli v. Goldman & Warshaw P.C.*, 651 F. Supp. 2d 273, 281 (D.N.J. 2009) ("Thus, Scioli essentially asks this Court to hold that the form summons created by the State of Hew [sic] Jersey, and used by countless lawyers and non-lawyers throughout the State, violates the FDCPA.  But such a holding would defy common sense and would not further the goals of the FDCPA.  Contrary to Scioli's contention, *using* the form summons—a form specifically created for the unsophisticated defendant—helps to ensure that even the least sophisticated debtor will understand the true 'character, amount, or legal status' of his debt."); *cf. Powers v. Credit Mgmt. Servs., Inc.*, 776 F.3d 567, 570 (8th Cir. 2015); *Abraham v. Midland Funding, LLC*, No. 114CV03485RWSJFK, 2016 WL 11567570, at *4–7 (N.D. Ga. Jan. 21, 2016).  The common use of these form summonses, without any resulting confusion, undermines Delgado's theory that send materially misrepresents Rule 5.02(a)(2).

Even if the statement is technically false, false but non-material statements are not actionable under § 1692e(10).  *Hill v. Accts. Receivable Servs., LLC*, 888 F.3d 343, 345–46 (8th Cir. 2018).  As the Seventh Circuit has explained: "The statute is designed to

provide information that helps consumers to choose intelligently, and by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect)." *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757–58 (7th Cir. 2009). Therefore, "a misleading statement must have the ability to influence a *consumer*'s decision." *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 942 (7th Cir. 2011). Given hand delivery would rarely (if ever) be more convenient than mailing for a consumer, there is no plausible reason to believe defendants would only respond to a complaint if summons more clearly informed them that they could hand deliver answers, and the widespread use of the challenged language in form summons promulgated by the Minnesota Judicial Branch and Minnesota Practice Series, any violation of § 1692e here is not material. It would not have the ability to influence a consumer's decision to respond to a complaint.

c

Delgado's notice-related claims would also alternatively be dismissed for failing to state a claim. Delgado brings § 1692f(1), § 1692e(5), and § 1692e(10) claims. She argues that language in the notice—"[Midland] will ask the Court to enter a judgment against you without any further court proceedings, unless you mail a written Answer or written response[,]" Compl. ¶ 34—was false and misleading in two ways. First, because Minnesota Rule of Civil Procedure 5.02(a)(2) allows hand delivery, *id.* ¶ 35, and second,

34

because "Minnesota law requires further court involvement before default judgment can be entered," Pl.'s Mem. in Opp'n at 20.

Delgado's § 1692f(1) claim runs into a familiar problem: "A plaintiff who pleads a violation of § 1692f(1) based on an action not 'permitted by law' must necessarily plead that another law, not the FDCPA, was violated." *Klein*, 2019 WL 79317, at *4.  But Delgado only alleges the notice "is contrary to Minn. Stat. § 548.101." Compl. ¶ 49. Without identifying a specific violation of statute, Delgado's conclusory allegations fail to state a claim.  And having reviewed the statute and notice of intent, no violation is evident.

The "without any further court proceedings" language is not false or misleading, and therefore does not violate § 1692e(5) or § 1692e(10).  The notice does not state that the state court will enter a judgment without any further court proceedings, it only represents that Midland "will ask" the state court to do so.  ECF No. 16 at 20.  And upon a request for default, a court may "hold a hearing" or "enter an administrative default judgment without a hearing if the court determines that the evidence submitted satisfies the requirements [of the statute]."  Minn. Stat. § 548.101(c).  Delgado nonetheless contends that "Minnesota law requires further court proceedings" because "an assigned-consumer debt plaintiff must persuade a district court that its admissible documentary evidence [is sufficient]." Pl.'s Mem. in Opp'n at 21.  But the unsophisticated consumer is not expected parse terms such as court proceeding in such a technical manner.  *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 595 (6th Cir. 2009).  That a state court must review submissions before entering an administrative default is beside the point.  Midland's notice plainly and accurately "conveys the consequences of failing [to respond]."  *Peters v. Gen. Serv.*

*Bureau, Inc.*, 277 F.3d 1051, 1056 (8th Cir. 2002).  "The unsophisticated consumer test is a practical one, and statements that are merely 'susceptible of an ingenious misreading' do not violate the FDCPA."  *Id.* (quoting *White v. Goodman,* 200 F.3d 1016, 1020 (7th Cir. 2000)).

Deciding whether the "unless you mail" language violates § 1692e(5) and § 1692e(10) is a closer call.  Unlike the summons, the notice plainly directs the consumer to mail a response.  ECF No. 16 at 20.  But the challenged language is part of Minnesota Statute § 548.101.  Section 548.101 requires debt collectors to mail consumers a notice of intent before requesting the state court enter a default.  Minn. Stat. § 548.101(a)(7).  The statute includes a template notice of intent.  *Id.*  A debt collector's notice of intent "must be substantially" in the form of the template.  *Id.*  When the Minnesota Legislature passed the bill into law in 2013, 2023 Minnesota Laws Chapter 104, sec. 3, defendants could hand deliver answers.  In other words, the Minnesota Legislature could have included personal service or other methods of service in the template.  It decided not to.  To conclude the Minnesota Legislature's template is a "false, deceptive, or misleading representation" of Minnesota's Rules of Civil Procedure would be an absurd result.  After all, the notice of intent provides an extra layer of protection to a consumer by requiring the debt collector to mail the notice after the debtor has failed to answer the summons.  And there may be compelling reasons, such as clarity and readability, that the Minnesota Legislature decided to only include mail (and not alternative forms of personal service) in its template.  Just as courts are reluctant to conclude that court forms violate the FDCPA, that rationale applies with far greater force to a form template has gone through the legislative process and been

signed into law.  For these reasons, and others discussed in the context of Midland's summons, any technical violation of the FDCPA is not material here.

### ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT** Defendant Midland Credit Management, Inc.'s Motion to Dismiss [ECF No. 13] is **GRANTED** as follows:

1.    The Complaint's summons- and notice-related claims are **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction; and

2.    In all other respects, the Complaint is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: March 25, 2024

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court