No. 24-1786

In the
United States Court of Appeals
For the
Eighth Circuit

Diana Delgado,

                        Plaintiff-Appellant,

vs.

Midland Credit Management, Inc.

                        Defendant-Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA,
NO. 23-CV-02128-ECT-JFD

**REPLY BRIEF OF APPELLANT**

Darren Brayer Schwiebert
DEBT LAWSUIT RELIEF, INC.
301 Fourth Avenue South
Suite 280N
Minneapolis, MN 55415
(612) 501-6008

John M. Buhta
SOUTHERN MINNESOTA REGIONAL
LEGAL SERVICES, INC.
903 West Center Street, Suite 230
Rochester, MN 55902
(507) 292-0080

September 6, 2024

# TABLE OF CONTENTS

**ARGUMENT** ................................................................................. 1
**A. THE FDCPA IS A CONSUMER PROTECTION STATUTE.** ..... 1
**B. APPELLEE CONCEDES SEVERAL ISSUES.** ......................... 3
**C. APPELLEE FAILED TO CARRY ITS BURDEN TO ESTABLISH COLLATERAL ESTOPPEL.** ............................. 4
   1. *Mach* Did Not Overrule *Hauschildt* ................................................ 5
   2. A County Clerk's "Judgment Roll" Entry Does Not Mean That All Issues Were "Necessarily Decided" for Collateral Estoppel Purposes. .............................................................................. 7
**D. INJUSTICE WOULD RESULT FROM APPLICATION OF COLLATERAL ESTOPPEL.** .............................................. 10
**CONCLUSION** ........................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Adams*, 21 Minn. 515 (Minn. 1875) .................................................. 9
*All Finish Concrete, Inc. v. Erickson*, 899 N.W.2d 557
    (Minn. Ct. App. 2017) ................................................................................ 6
*Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659 (8th Cir. 2009) ...... 2, 10, 11
*Bradley v. Haislet*, 2021 WL 2793723 (Minn. Ct. App. 2021) ...................... 6
*Fagre v. Fagre*, 2020 WL 4932842 (Minn. Ct. App. 2020) .......................... 6
*Friends of Tower Hill Park v. Foxfire Props.,* LLC, 2020 WL 994767
    (Minn. Ct. App. 2020) ................................................................................ 6
*Great Plains Ed. Found., Inc. v. Student Loan Fin. Corp.*, 954 N.W.2d 844
    (Minn. Ct. App. 2020) ................................................................................ 6
*Hacker v. Barnhart*, 459 F.3d 934 (8th Cir. 2006) ........................................ 3
*Harris v. Chase Bank USA, N.A.*, 2012 WL 1948775
    (D. Minn. May 30, 2012) ............................................................................ 8
*Hauschildt v. Beckingham*, 686 N.W.2d 829 (Minn. 2004) .............. 4, 5, 6, 7
*Heintz v. Jenkins*, 514 U.S. 291 (1995) ........................................................ 1
*Heroux v. Callidus Portfolio Mgmt., Inc.*, 2018 WL 2018069
    (D. Minn. 2018) .......................................................................................... 6
*Husten v. Schnell*, 969 N.W.2d 851 (Minn. Ct. App. 2021) .......................... 6
*In re Estate of Chisolm*, 2018 WL 492614 (Minn. Ct. App. 2018) ................ 6
*In re Trust Agreement of Johnson*, 2015 WL 4715341
    (Minn. Ct. App. 2015) ................................................................................ 7
*Isanti Pines Tree Farm, LLC v. Swanson*, 2017 WL 1436094
    (Minn. Ct. App. 2017) ................................................................................ 6
Johnson *v. Township of Florence*, 2016 WL 2946248
    (Minn. Ct. App. 2016) ................................................................................ 7
*Kemp v. State Farm Ins. Co.*, 2023 WL 1770431 (Minn. Ct. App. 2023) ..... 6
*Lariat Cos. v. Wrigley*, 2023 WL 2127379 (Minn. Ct. App. 2023) ............... 6
*Mach v. Wells Concrete Prods. Co.*, 866 N.W.2d 921 (Minn. 2015) .... 4, 5, 10
*Mark v. Ault*, 498 F.3d 775 (8th Cir. 2007) ................................................... 3
*Peters v. Gen. Svc. Bureau, Inc.*, 277 F.3d 1051 (8th Cir. 2002) .................. 1
*Reichel Investments, L.P. v. Reichel*, 2016 WL 3884552
    (Minn. Ct. App. 2016) ................................................................................ 6
*Richmond v. Higgins*, 435 F.3d 825 (8th Cir. 2006) ..................................... 1
*S. Robideau Constr., Inc. v. Hiber*, 2016 WL 4497583
    (Minn. Ct. App. 2016) ................................................................................ 7

*Scheffler v. Comm'r of Pub. Safety*, 2015 WL 9437562
 (Minn. Ct. App. 2015) .............................................................................. 7
*Shimota v. Klemp & Stanton, PLLP*, 2023 WL 4699769
 (Minn. Ct. App. 2023) .............................................................................. 6
*Soboleski v. Cassibo*, 2021 WL 4145008 (Minn. Ct. App. 2021) ................... 6
*State v. Atwood*, 925 N.W.2d 626 (Minn. 2019) ........................................... 5
*State v. Northrup*, 2019 WL 6838485 (Minn. Ct. App. 2019) ...................... 6
*Town of Denmark v. Cordes*, 2021 WL 5441817 (Minn. Ct. App. 2021) ...... 6

**Statutes**

15 U.S.C. § 1692(a) ..........................................................................................1
15 U.S.C. § 1692f(1) ................................................................................... 2, 12
Minn. R. Civ. P. 55.01(a) ............................................................................... 8
Minn. Stat. § 548.101 ........................................................................... 8, 9, 11
Minn. Stat. § 548.101(a)(5) ........................................................................... 9

**Other Citations**

Muchlinksi, Joe (2015) "Constraining Minnesota's Hip-Pocket Regime: Too Much or Not Enough? (Or Both?) (Or Neither?)" WILLIAM MITCHEL LAW REVIEW, Vol. 41, Issue 4) ............................................................... 8
https://files.consumerfinance.gov/f/201509_cfpb_consent-order-encore-capital-group.pdf ................................................................................... 3
https://files.consumerfinance.gov/f/documents/cfpb_encore-capital-group-et-al_stipulated-final-judgment-and-order_2020-10.pdf. ............. 3

**ARGUMENT**

**A. THE FDCPA IS A CONSUMER PROTECTION STATUTE.**

Appellee characterizes the FDCPA as a statute designed to protect creditors from "retribution in the form of follow-on, collateral attacks on [collection litigation] as a means to avoid just and owing debts…." Brief of Appellee, p. 4. There is no reference anywhere in the language of the FDCPA to "follow-on, collateral attacks." To the contrary, the U.S. Supreme Court has long held that the FDCPA was enacted to protect consumers, and applies to debt collectors' litigation conduct and thus gives rise to "follow-on, collateral attacks," *i.e.*, federal challenges to debt collectors' conduct in state collection litigation. *See Heintz v. Jenkins*, 514 U.S. 291, 299 (1995).

Appellee mischaracterizes the central purpose of the Act, which is the protection of consumers. "The purpose of the FDCPA is to 'eliminate abusive debt collection practices by debt collectors'….." *Richmond v. Higgins*, 435 F.3d 825, 828 (8th Cir. 2006) (citing 15 U.S.C. § 1692(a)). *See also Peters v. Gen. Svc. Bureau, Inc.*, 277 F.3d 1051, 1057 (8th Cir. 2002) ("The FDCPA is designed to protect consumers from abusive debt collection practices and to protect ethical debt collectors from competitive disadvantage.")

1

The overall theme of Appellee's response – that the FDCPA exists to protect Appellee's ability to collect debts in state court without fear of a federal lawsuit, and that the present case is Appellant's effort to "avoid just and owing debts" – suffers from at least two faulty assumptions. First, while this appeal concerns a *procedural* defense to Appellant's claim, Appellee asks this Court to presume that Appellant's 15 U.S.C. § 1692f(1) claim – based on an allegation that Appellee sued her without owning the alleged debt – is factually and substantively meritless. For present purposes, however, the truth of Appellant's factual allegations is what must be presumed. *See Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (motion for judgment on the pleadings "require[s] the court to accept as true all factual allegations set out in the complaint in the light most favorable to the plaintiffs, drawing all inferences in their favor") (citations omitted).

Second, Appellee's repeated references to itself as a one of the "debt collectors who observe fair, lawful collection practices" (Appellee's Brief, p. 4) does not withstand scrutiny. In 2015, the Consumer Financial Protection Bureau (CFPB) brought an action against Appellee and its parent corporation Encore for violations of the FDCPA. The action resulted in a consent order with Appellee paying over $52 million. The Consent

Order is available at:

https://files.consumerfinance.gov/f/201509_cfpb_consent-order-encore-capital-group.pdf. The Consent Order identifies a number of violations of the FDCPA by Appellee. *Id.* at 24 – 30.

In 2020, the CFPB brought another action against Appellee and Encore for violations of the previous consent order and the FDCPA. This action resulted in a stipulated final judgment and order with Appellee paying over $15 million. A copy of the Final Judgment and Order is available at: https://files.consumerfinance.gov/f/documents/cfpb_encore-capital-group-et-al_stipulated-final-judgment-and-order_2020-10.pdf.

**B. APPELLEE CONCEDES SEVERAL ISSUES.**

In light of arguments ***not*** raised in Appellee's response, several issues are ***not*** presently in dispute. "Ordinarily, [the] 'failure to raise or discuss an issue in [a] brief [would] be deemed an abandonment of that issue.'" *Mark v. Ault*, 498 F.3d 775, 786 (8th Cir. 2007) (citing *Hacker v. Barnhart*, 459 F.3d 934, 937 n.2 (8th Cir. 2006)).

Nowhere in Appellee's response does it contest that: (1) Appellant has standing to bring her FDCPA claim; (2) attempting to collect a debt not actually owned by Appellee as asserted in the complaint is a valid 1692f(1) claim; (3) the Minnesota Supreme Court in *Hauschildt* adopted a

"distinctly contested" and "directly determined" standard; and (4) under the standard adopted by the Supreme Court in *Hauschildt*, the district court's decision in this case is erroneous.

**C. APPELLEE FAILED TO CARRY ITS BURDEN TO ESTABLISH COLLATERAL ESTOPPEL.**

As acknowledged by Appellee, the Minnesota Supreme Court has held that for collateral estoppel to apply, the identical issue must have been "distinctly contested and directly determined" in the earlier adjudication. *Hauschildt v. Beckingham*, 686 N.W.2d 829, 837 (Minn. 2004). Conceding that it cannot meet this standard, Appellee insists that the Minnesota Supreme Court – *sub silentio* – overruled *Hauschildt* in *Mach v. Wells Concrete Prods. Co.*, 866 N.W.2d 921, 927 (Minn. 2015), eliminating the "distinctly contested and directly determined" requirement and replacing it entirely with a lower standard of "actually presented and necessarily determined." Appellee's Brief, pp. 12-13.

In light of Appellee's concessions described above, the outcome of this appeal is therefore dictated by two questions, ***both of which*** Appellee must prevail on in order to avoid reversal. First, did the Minnesota Supreme Court change the *Hauschildt* standard for collateral estoppel in *Mach*? Second, even assuming the answer is yes, does an unsigned "judgment roll" document from a county clerk constitute conclusive

4

evidence that the issue of ownership was "actually presented and necessarily determined" by the state court? The answer to both questions is no.

1. *Mach* Did Not Overrule *Hauschildt*.

The Minnesota Supreme Court in *Mach* did not silently lower the established standard for collateral estoppel under Minnesota law. The Supreme Court in *Mach* did not expressly discuss, much less reject, the standard from *Hauschildt*. In fact, the Supreme Court in *Mach* reversed the Court of Appeals' application of collateral estoppel, holding that "collateral estoppel does not apply to bar a claim for reimbursement of medical expenses for treatment received when an employee's medical condition has changed." *Mach* at 928. Because the prior litigation did not even meet the lower standard of having "actually presented and necessarily determined" the same factual issues, the discussion of a lower standard was, by definition, *dicta*. *See State v. Atwood*, 925 N.W.2d 626, 629 (Minn. 2019) (statements not necessary to the decision in the case are non-binding *dicta*).

If *Mach* truly overruled *Hauschildt* with regard to the established collateral estoppel standard, that would certainly be news to the Minnesota courts. Indeed, there are no fewer than 19 Minnesota Court of Appeals

decisions (and one Federal District Court of Minnesota decision)[1] post-*Mach* that have cited the (purportedly overruled) *Hauschildt* legal standard. *See Kemp v. State Farm Ins. Co.*, 2023 WL 1770431, *3 (Minn. Ct. App. 2023); *Lariat Cos. v. Wrigley*, 2023 WL 2127379, *3 (Minn. Ct. App. 2023); *Shimota v. Klemp & Stanton, PLLP*, 2023 WL 4699769, *3 (Minn. Ct. App. 2023); *Husten v. Schnell*, 969 N.W.2d 851, 860 (Minn. Ct. App. 2021); *Town of Denmark v. Cordes*, 2021 WL 5441817, *4 (Minn. Ct. App. 2021); *Bradley v. Haislet*, 2021 WL 2793723, *7 (Minn. Ct. App. 2021); *Soboleski v. Cassibo*, 2021 WL 4145008, *4 (Minn. Ct. App. 2021); *Fagre v. Fagre*, 2020 WL 4932842, *3 (Minn. Ct. App. 2020); *Great Plains Ed. Found., Inc. v. Student Loan Fin. Corp.*, 954 N.W.2d 844, 852 (Minn. Ct. App. 2020); *Friends of Tower Hill Park v. Foxfire Props.*, LLC, 2020 WL 994767, *2 (Minn. Ct. App. 2020); *State v. Northrup*, 2019 WL 6838485, *8 (Minn. Ct. App. 2019); *In re Estate of Chisolm*, 2018 WL 492614, *5 (Minn. Ct. App. 2018); *All Finish Concrete, Inc. v. Erickson*, 899 N.W.2d 557, 567 (Minn. Ct. App. 2017); *Isanti Pines Tree Farm, LLC v. Swanson*, 2017 WL 1436094, *4 (Minn. Ct. App. 2017); *Reichel Investments, L.P. v. Reichel*, 2016 WL 3884552, *5 (Minn. Ct. App. 2016);

---

[1] *See Heroux v. Callidus Portfolio Mgmt., Inc.*, 2018 WL 2018069, *3 (D. Minn. 2018) (Doty, J.).

*S. Robideau Constr., Inc. v. Hiber*, 2016 WL 4497583, *2 (Minn. Ct. App. 2016); Johnson *v. Township of Florence*, 2016 WL 2946248, *3 (Minn. Ct. App. 2016); *Scheffler v. Comm'r of Pub. Safety*, 2015 WL 9437562, *7 (Minn. Ct. App. 2015); *In re Trust Agreement of Johnson*, 2015 WL 4715341, *4 (Minn. Ct. App. 2015).

For collateral estoppel, Minnesota law requires that the issue in question be distinctly contested and directly determined in the previous action. *Hauschildt*, 686 N.W.2d at 837. There can be no reasonable dispute that the factual issues raised in Appellant's 1692f(1) claim ***were not*** "distinctly contested and directly determined" in state court. This alone requires reversal of the district court's ruling.

2. <u>A County Clerk's "Judgment Roll" Entry Does Not Mean That All Issues Were "Necessarily Decided" for Collateral Estoppel Purposes</u>.

A second argument that Appellee ***must win*** in order to avoid reversal is that an unsigned "judgment roll" entry processed by a county clerk provides evidence that the issue of ownership was "necessarily decided" by the Minnesota Court. Even assuming that *Mach* is distorted into changing the standard set forth in *Hauschildt* (it did not), application of the lower standard advocated by Appellee fails as a factual matter.

Minnesota is one of three remaining states where a lawsuit is initiated by service of the summons and complaint and ***not*** by filing the complaint.

7

*See* Muchlinksi, Joe (2015) "Constraining Minnesota's Hip-Pocket Regime: Too Much or Not Enough? (Or Both?) (Or Neither?)" WILLIAM MITCHEL LAW REVIEW, Vol. 41, Issue 4 at 1560. "This is colloquially referred to as 'pocket service' because a plaintiff may serve one or more defendants and keep the complaint 'in his pocket' rather than making a public filing." *Harris v. Chase Bank USA, N.A.*, No. 12-669 (JNE/AJB), 2012 WL 1948775, at *1 (D. Minn. May 30, 2012). Because of this unique procedure, it is possible for a defendant to be in default before the complaint is ever filed with the Court (if the Defendant fails to serve an answer within the required time period).

    Minnesota procedure accounts for this situation by authorizing county clerks to enter default ***in substantive areas other than consumer debt*** where the Plaintiff submits evidence that the summons and complaint was properly served and the Defendant failed to answer. *See* Minn. R. Civ. P. 55.01(a). "Minn. R. Civ. P. 55.01(a) permits entry of judgment by the administrator in limited situations." Advisory Comm. Comment to 1992 Amendment to Minn. Gen. R. Prac. 117.

    Concerned with the effect of this procedure on consumers, the Minnesota Legislature in 2013 adopted Minn. Stat. § 548.101. Unlike Rule 55.01(a), which only requires the Court administrator to review Plaintiff's

affidavit establishing that ***Defendant*** has "failed to plead or otherwise defend," Minn. Stat. § 548.101 requires (among other things) "***admissible evidence*** establishing a valid and complete chain of assignment of the debt from the original creditor to the party requesting judgment, including documentation or a bill of sale evidencing the assignment ***with evidence*** that the particular debt at issue was included in the assignment referenced in the documentation or bill of sale." Minn. Stat. § 548.101(a)(5) (emphasis added).[2]

     Thus, in assigned consumer debt cases like this one, a Judge (and not a court administrator or clerk) must make legal determinations of the admissibility and the sufficiency of a debt collector plaintiff's documentation, by reference to the Minnesota Rules of Evidence and Minnesota law. That simply did not happen in this case. The only evidence in the record is an unsigned ***document*** processed by a clerk of the Court

---

[2] Appellee relies on *Adams v. Adams*, 21 Minn. 515, 516 (Minn. 1875) for the proposition that "a judgment by default is equivalent to a confession of the material facts alleged in the complaint…and, on principle, should conclude the party as to all matters so confessed as though there had been a verdict for the plaintiff." Appellee's Brief, p. 21. Even if this 19th century holding survived subsequent Supreme Court rulings imposing a "distinctly contested" requirement, the Minnesota legislature has unambiguously stepped in to create an exception for assigned consumer debt cases like this one. Minn. Stat. § 548.101 makes clear that a mere default by a consumer defendant is ***not*** equivalent to a confession of all the material facts.

9

entering judgment. App. 52; R. Doc. 16, p. 22. There was no determination, much less a "necessary determination," by a state court judge that Appellee owns the alleged debt at issue. In other words, there is no evidence that the issue of ownership was "necessarily decided" by a state court judge (or even a court clerk).

Instead, Appellee attempts to twist the protective "shield" requirements of 548.101 into a "sword" to use against consumers and argues without any factual support that because a judgment was improperly entered based upon an unsigned ***document*** by a court administrator, the Court "must have" followed the procedure and therefore ownership "must have" been decided. Appellee's Brief, pp. 13-15. There is zero factual evidence in the record to support this conclusion. The burden in collateral estoppel in on the Appellee (*Mach*, 866 N.W.2d at 927), and all factual inferences are to be drawn in favor of the Appellant. *Ashley County*, 552 F.3d at 665.

**D. INJUSTICE WOULD RESULT FROM APPLICATION OF COLLATERAL ESTOPPEL.**

Even if Appellant prevails on the issues discussed above, this Court still must reverse based on the required element of fairness in application of the doctrine of collateral estoppel. Appellee concedes that the district court failed entirely to address the required element of whether application

of the collateral doctrine in this case would work an injustice upon Appellant. The problems and false assumptions identified above plague Appellee's argument on the issue of fairness.

For example, Appellee again seeks to use the consumer protections of Minn. Stat. § 548.101 as a sword against the consumer. Appellee's Brief, p. 29. Appellee argues that somehow ***the existence*** of statutory protections, ***even though they were not applied for Appellant's benefit in this case***, render the dismissal of Appellant's FDCPA case fair. To the contrary, the fact that Minn. Stat. § 548.101 was not applied by any judge in this case highlights the unfairness of rigidly applying the doctrine against Appellant.

Appellee then once again argues that this is merely a "thinly veiled attempt" by Appellant to use the FDCPA as "a debt relief statute" or a "glorified game of gotcha." Appellee's Brief, pp. 30-32. In doing so, Appellee improperly urges this Court to presume that her FDCPA claim is factually meritless, when in fact this Court must presume that the facts alleged are true. *Ashley County*, 552 F.3d at 665.

Appellee further faults Plaintiff for failing to move to vacate the default judgment, arguing that this shows "they know full well that they could not overcome [Appellee's] showing on the ownership issue under any circumstances." Appellee's Brief, p. 31. This is a mere conclusion with no

support in the record whatsoever. It is simply an *ad hominem* attack on Appellant and her counsel. Appellee does not cite any statutory provision or controlling case to support the proposition that Appellant may not assert her FDCPA rights unless she first moves to vacate the unsupported and unproven judgment in state court. In reality, Appellee cannot, for there is no statutory provision or controlling case so holding.[3]

## CONCLUSION

The district court's order dismissing this case should be REVERSED and the case remanded for Appellant Diana Delgado to pursue her claim that MCM violated her rights under 15 U.S.C. § 1692f(1).

---

[3] As discussed in Appellant's Opening Brief, the effective result of the district court's holding that the decision not to litigate a debt collection lawsuit in state court (for whatever reason) precludes a consumer from bringing a claim against the debt collector for a violation of their federal rights would result in an injustice not just on Appellant, but also on countless other consumers who have default judgments in consumer debt cases in Minnesota. Appellant's Opening Brief, pp. 24-25.

Respectfully Submitted,

/s/*Darren Brayer Schwiebert*
Darren Brayer Schwiebert
DEBT LAWSUIT RELIEF, INC.
301 Fourth Avenue South, Ste 280N
Minneapolis, MN 55415

John M. Buhta
SOUTHERN MINNESOTA REGIONAL LEGAL SERVICES, INC.
903 West Center Street, Ste 230
Rochester, MN 55902

*Counsel for Appellant*

DEBT LAWSUIT RELIEF, INC. is a 501(c)(3) non-profit organization. The purpose of this corporation is providing relief to the poor and distressed by providing legal services to persons who were otherwise financially incapable of obtaining such services.

SOUTHERN MINNESOTA REGIONAL LEGAL SERVICES, INC. (SMRLS) is a 501(c)(3) non-profit organization that provides legal help to low-income people in critical civil matters.

September 6, 2024

# CERTIFICATE OF COMPLIANCE WITH WORD LIMITS

Pursuant to Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure, I hereby certify that the textual portion of the foregoing brief (exclusive of the tables of contents and authorities, certificates of service and compliance, but including footnotes) contains   2,741    words in Georgia 14-point font as determined by the word counting feature of Microsoft Word 365.

Pursuant to Circuit Rule 28A(h), I also hereby certify that the electronic files of this Brief has been submitted to the Clerk via the Court's CM/ECF system.  The files have been scanned for viruses and are virus-free.

>Respectfully Submitted,
>
>/s/*Darren Brayer Schwiebert*
>Darren Brayer Schwiebert
>
>*Counsel for Appellant*

**CERTIFICATE OF SERVICE**

Pursuant to Rule 25 of the Federal Rules of Appellate Procedure, and Circuit Rule 25A(a), I hereby certify that on the 6th day of September, 2024, I filed a copy of the Reply Brief of Appellant with the Clerk of the Court through the Court's CM/ECF system, which will serve electronic copies on all registered counsel.

    Respectfully Submitted,

    /s/*Darren Brayer Schwiebert*
    Darren Brayer Schwiebert

    *Counsel for Appellant*